Filed 3/5/25  P. v. Miller CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C099683 |
| v. | (Super. Ct. No. 19CR000699) |
| JUSTIN ARNOLD MILLER, | |
| Defendant and Appellant. | |

A jury convicted defendant Justin Arnold Miller of forcible sexual penetration of a child under the age of 14, and forcible lewd or lascivious conduct with a child under the age of 14.  The trial court sentenced him to 24 years in state prison.

Defendant now contends (1) the evidence is insufficient to support his convictions, (2) the trial court committed various evidentiary errors, (3) the jury should have been instructed with a bracketed portion of the witness credibility instruction, (4) the prosecutor engaged in prosecutorial misconduct, (5) the trial court was biased against defendant, (6) defendant's trial counsel provided ineffective assistance, and (7) the trial court should not have denied defendant's motion for a new trial.

1

Defendant's contentions are either forfeited or lack merit. Accordingly, we will affirm the judgment. But we will order a correction to the sentencing minutes and abstract of judgment.

BACKGROUND

In March 2019, E.R. lived in Red Bluff with her mother, defendant, and two younger siblings. She was 13 years old. Because her mother went to work early in the morning, defendant was in charge of waking up E.R. on days her mother worked. On four separate occasions, defendant sexually molested E.R.

The first incident occurred on March 2. According to E.R., when it was time for her to wake up, defendant shook her shirt, exposing her breast. Defendant kissed E.R. on the mouth and breast.

On the following morning, March 3, defendant again shook E.R.'s shirt, again exposing her breast. Defendant kissed her and touched her thigh and vagina under her pants, but did not penetrate her vagina.

The third incident occurred the next morning, March 4, and began the same way. According to E.R., defendant exposed, touched, and kissed her breast, kissed her on the mouth, sucked on her nipple, and touched her thigh and vagina. This time, defendant penetrated her vagina. E.R. did not tell anyone because she was scared.

A fourth incident occurred five days later, on March 9. E.R. said defendant shook her shirt, exposed her breast, kissed her on the mouth and breast, sucked on her nipple, and put his hand on her vagina. But this time defendant got up, moved around, got on top of her, exposed himself and her, and put his penis on her vagina. Defendant penetrated her vagina, but E.R. was not sure if he did so with his penis.

On each of those occasions, E.R. did not open her eyes, but she knew it was defendant because she recognized his voice as he was shaking her and telling her to wake up. E.R. testified that during the third incident, defendant told her: " '[I]f you don't wake up, I'm going to take your virginity.' "

2

E.R.'s grandmother testified that she went to E.R.'s house on the morning of the fourth incident to help take care of E.R. and her siblings. At some point, defendant said it was hard to wake up E.R. that morning. E.R.'s grandmother responded: " 'Well, she must need her sleep, let's leave her alone.' " When E.R. came out of her bedroom, "[h]er lower lip was trembling and tears were in her eyes." The grandmother asked if she was okay, and E.R. informed the grandmother that defendant had been putting his hands under her shirt and touching her breasts. The grandmother asked E.R.'s grandfather to take E.R. out for breakfast, and the grandmother told E.R.'s mother what E.R. had disclosed.

That same day, a detective spoke with E.R.'s mother and scheduled a forensic interview and sexual assault examination for E.R. E.R. provided a description of the incidents consistent with her trial testimony. During the examination, swabs were taken from E.R.'s vagina and both breasts for purposes of a DNA analysis. The left breast swab contained a mixture of male and female DNA. The DNA profile of the male contributor matched defendant's DNA profile. The probability of such a match occurring at random "was estimated to be approximately one in 14 sextillion African Americans, one in 33 quintillion Caucasians, and one in 110 quintillion Hispanics," providing "strong evidence" that defendant was the male contributor to that mixture.[1]

DISCUSSION

I

Defendant contends the evidence is insufficient to support his convictions.

---

[1] One of the vaginal swabs also contained a mixture of male and female DNA. However, only a partial profile was obtained from the male component. Defendant could not be eliminated as a potential contributor, nor could any of his male relatives. The probability of that partial profile occurring at random was "no more than approximately one in 2,100 African-American males, one in 960 Caucasian males, and one in 1,600 Hispanic males."

3

A

"In reviewing a claim of insufficient evidence, we review the record in its entirety, considering the evidence most favorably to the prevailing party, and determine whether any rational trier of fact could have found the prosecution proved its case beyond a reasonable doubt. [Citation.] We do not sit as the trier of fact and determine whether the evidence proves guilt beyond a reasonable doubt. Rather, we determine if substantial evidence supports the conclusion of the trier of fact. [Citation.] Substantial evidence is evidence that is reasonable, credible and of solid value [citation], and the testimony of a single witness is sufficient evidence to support the verdict." (*People v. Zavala* (2005) 130 Cal.App.4th 758, 766 (*Zavala*).)

B

Defendant was convicted of two counts of forcible sexual penetration of a child under the age of 14 years, in violation of Penal Code section 289, subdivision (a)(1)(B).[2] That provision prohibits acts of (1) "sexual penetration," (2) "upon a child who is under 14 years of age," (3) "when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (§ 289, subd. (a)(1)(B).) As relevant here, " '[s]exual penetration' is the act of causing the penetration, however slight, of the genital . . . opening of any person . . . for the purpose of sexual arousal, gratification, or abuse by any foreign object, substance, instrument, or device . . . ." (§289, subd. (k)(1).)

E.R. testified she was 13 years old when defendant sexually molested her. She explained that during the third and fourth incidents, he moved his hand and penetrated her vagina. During each incident he kissed her on the mouth and touched and kissed her

_____

[2] Undesignated statutory references are to the Penal Code.

4

breast. In the third incident he told her he would take her virginity if she did not wake up. As part of the fourth incident, he rubbed his penis against her vagina.

The trial court instructed the jury that " '[d]uress' means a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which she would not otherwise have performed, or acquiesce in an act to which she otherwise would not have submitted." Such duress "can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes. [Citations.] 'Where the defendant is a family member and the victim is young, . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim' is relevant to the existence of duress." (*People v. Senior* (1992) 3 Cal.App.4th 765, 775.) Indeed, "[w]hen the victim is young and is molested by her father in the family home, duress will be present in all but the rarest cases." (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1072-1073.) Defendant was E.R.'s stepfather and an authority figure in her life. He sexually molested her while they were alone in her bedroom and while her mother was at work. He initiated the conduct while she was still asleep or just waking up.

There is sufficient evidence to support the convictions for forcible sexual penetration of a child under the age of 14.

C

Defendant was also convicted of four counts of forcible lewd or lascivious conduct with a child under the age of 14 years in violation of section 288, subdivision (b)(1). That provision prohibits (1) "any lewd or lascivious act" that is committed (2) "upon or with the body, or any part or member thereof, of a child who is under the age of 14 years," (3) "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of [the defendant] or the child," and (4) accomplished "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (§ 288, subds. (a), (b)(1).)

5

Once again, we conclude sufficient evidence supports the convictions.

D

Defendant nevertheless claims the convictions are unsupported because E.R. was asleep when the alleged conduct occurred and it could have been a dream. In support of this argument, defendant points to her testimony that defendant was trying to wake her up but she was not waking up. However, E.R. also described defendant's conduct in detail. And while she did not open her eyes during the incidents, she identified defendant by his voice. Viewing E.R.'s testimony as a whole, as we must, a reasonable jury could have concluded that she woke up while defendant shook her, but rather than open her eyes, she pretended to be asleep, at which point defendant proceeded to commit various lewd acts and acts of sexual penetration. A jury could conclude that E.R.'s comment about not waking up referred to defendant's perspective, not hers.

Defendant also points to evidence that he claims contradicts E.R.'s testimony. The evidence he identifies is the sexual assault examiner's testimony about E.R. reporting that defendant said E.R. "better wake up or she was going to lose her virginity." Defendant contends he was merely attempting to act as a responsible parental figure by telling E.R. that if she did not "metaphorically" wake up she was going to lose her virginity "to her boyfriend." But what defendant said to E.R., and what he meant by it, was for the jury to decide, not this court. Our task is to assess the sufficiency of the evidence, and in doing so we must "resolve all conflicts in the evidence . . . in favor of the judgment. It is only when the evidence, so viewed, is insufficient to sustain the finding of the trier of the facts that reversal upon this ground is warranted." (*People v. Hicks* (1959) 175 Cal.App.2d 556, 557.) We do not find the evidence lacking.

Defendant notes that E.R. was the only witness who testified to the details of the crimes, and only one other witness, the grandmother, could place him at the scene of only one of the incidents. The point is not persuasive because the testimony of a single witness is sufficient to support a verdict. (*Zavala, supra*, 130 Cal.App.4th at p. 766.)

6

In any event, E.R.'s testimony was corroborated not only by the grandmother, but also by DNA evidence.

The evidence is sufficient to support each of defendant's convictions.[3]

II

Defendant next claims the trial court committed a number of evidentiary errors. All but one of defendant's evidentiary claims are forfeited; the remaining claim fails on the merits.

A

We begin with forfeiture. Evidence Code section 353, subdivision (a), provides that a judgment may not be reversed for erroneous admission of evidence unless "[t]here appears of record an objection to . . . the evidence that was timely made and so stated as to make clear the specific ground of the objection . . . ." The failure to make such an objection, on the same ground asserted on appeal, forfeits the contention. (*People v. Demetrulias* (2006) 39 Cal.4th 1, 20-21.) " 'The reason for the requirement is manifest: a specifically grounded objection to a defined body of evidence serves to prevent error. It allows the trial judge to consider excluding the evidence or limiting its admission to avoid possible prejudice. It also allows the proponent of the evidence to lay additional

---

[3] Defendant faults the trial court for a statement it made outside the presence of the jury while ruling on defendant's motion for acquittal of the forcible lewd or lascivious conduct counts. We need not describe the statement because it has no bearing on whether substantial evidence supports the judgment. Accordingly, we also reject defendant's argument that the trial court erred in denying the motion for acquittal. "When a trial court rules on a motion for a judgment of acquittal under section 1118.1, the standard the trial court must apply is the same as what the appellate court applies when reviewing the sufficiency of the evidence supporting conviction." (*People v. Wilson* (2021) 11 Cal.5th 259, 301.) Regardless of what was said during the hearing on the motion, there was sufficient evidence to allow the matter to go to the jury. And defendant's suggestion that the trial court was biased in favor of the prosecution is forfeited for failure to object or request disqualification. (See *People v. Johnson* (2018) 6 Cal.5th 541, 592 (*Johnson*).)

foundation, modify the offer of proof, or take other steps designed to minimize the prospect of reversal.' " (*People v. Partida* (2005) 37 Cal.4th 428, 434 (*Partida*).)

In addition to the requirement of a timely and specific objection in the trial court, an appellant will forfeit an appellate argument by failing to provide adequate briefing on the issue. This is because judgments are "presumed to be correct, and it is appellant's burden to affirmatively show error. [Citation.] To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

Among other things, defendant asserts the following arguments that are forfeited for failure to comply with the foregoing rules: (1) testimony defendant sexually assaulted E.R. while she was asleep amounted to spectral evidence and the trial court committed structural constitutional error in allowing it; (2) the trial court should not have admitted E.R.'s specific testimony that she felt defendant's penis on her vagina forcefully; (3) the trial court erred in admitting defendant's out-of-court statement that if E.R. did not wake up he would take her virginity; (4) the trial court should not have excluded evidence of the mother's alleged greediness; and (5) the trial court erred in admitting the DNA evidence.

Only once during E.R.'s testimony regarding the details of the offenses did defendant object, and that was a specific objection to her testimony that she "felt his penis on [her] vagina, forcefully." Defense counsel objected to the last portion of that testimony as lacking foundation and stating a legal conclusion. The objection was overruled. Regardless of the merit of the objection, it did not preserve defendant's assertion on appeal that *all* of E.R.'s testimony regarding defendant's conduct amounted

8

to "spectral evidence" similar to the Salem witch trials. Moreover, defendant has not made a legal argument to support his assertion that a showing of prejudice is not required.

The objection did preserve a contention that E.R.'s description of defendant "forcefully" placing his penis against her vagina lacked foundation and amounted to an improper legal conclusion. But even if we assume (without deciding) that it was evidentiary error to allow E.R. to use the word "forcefully" in her testimony, defendant has not established that such an evidentiary error was unduly prejudicial given the totality of the evidence.

Turning to defendant's argument that the trial court erred by allowing E.R. to recount defendant's statement that he would take her virginity if she did not wake up, defendant did not object to that testimony at trial. He did object to the sexual assault examiner's testimony recounting the statement in slightly different words, but that objection did not preserve defendant's argument on appeal that the trial court should not have allowed E.R. to recount the statement. Anticipating our conclusion, defendant argues it would have been futile to object given the trial court's erroneous presumption that E.R. was awake. However, defendant never objected to E.R.'s testimony on the ground that she was describing events that she dreamed. Without bringing to the trial court's attention the purportedly erroneous presumption that E.R. was awake, defendant cannot use that as a basis for his futility argument on appeal.

In any event, the foregoing three contentions are based, in whole or in part, on an assumption that E.R.'s testimony was derived from a recurring dream. Defense counsel made that argument to the jury, but a reasonable jury could have concluded that E.R.'s testimony was based on her perception of actual events. Any question about whether she was dreaming would not have been an appropriate basis to exclude her testimony. (See *People v. Anderson* (2001) 25 Cal.4th 543, 573 & 574 [trial court " 'may exclude the testimony of a witness for lack of personal knowledge *only if no jury could reasonably*

9

*find* that [s]he has such knowledge' " and " 'the determination whether [s]he in fact perceived and does recollect is left to the trier of fact' "].)

As for defendant's argument that the trial court should not have excluded evidence of the mother's alleged greediness, defendant did not specifically proffer any such evidence below. And in discussing the contention in appellant's opening brief, defendant did not cite to the record or to legal authority. Accordingly, the argument is forfeited. (See *Partida, supra*, 37 Cal.4th at p. 434; *In re S.C., supra*, 138 Cal.App.4th at p. 408.)

Defendant's challenge to the DNA evidence is also forfeited for failure to adequately brief the issue. The entirety of the relevant argument spans four sentences in the opening brief and does not cite to the record or to legal authority. (*In re S.C., supra*, 138 Cal.App.4th at p. 408.)

## B

We now address defendant's remaining evidentiary claim. Defendant argues the trial court should not have excluded evidence that E.R. previously accused other men of rape or sexual molestation. Our review of the record, however, indicates defendant's trial counsel did not seek to admit evidence that E.R. previously accused multiple men of sexual offenses, but rather evidence that she accused one other person of multiple sexual offenses. And although defendant asserts on appeal that E.R.'s prior accusations were false, the person she accused was found guilty of the charged offenses. There was no abuse of discretion in excluding the evidence.

### (1)

Defendant moved in limine to admit evidence that E.R. accused another person of sexual assault in Shasta County in 2015, acknowledging in the motion that E.R.'s accusations resulted in that person's conviction. Nevertheless, defendant argued "[t]his type of impeaching evidence is critical to the defense since '[t]he fact that a witness stated something *that is not true* as true is relevant to the witness's credibility whether she fabricated the incident or fantasized it.' " (Italics added.) Defendant also argued that the

10

similarity of E.R.'s allegations in the current and prior cases made the proffered evidence admissible even though the person she previously accused was found guilty. Defendant argued that such evidence would not be subject to Evidence Code section 782's procedure for admission of "evidence of sexual conduct of the complaining witness" (Evid. Code, § 782, subd. (a)) because he was "not seeking to admit prior sexual conduct . . . but rather the existence of prior similar allegations . . . to impeach the veracity of the present accusations." Defendant further stated that the evidence would "show that [E.R.'s] sexual knowledge came from a source other than the criminal acts [he] is alleged to have committed with her." Finally, defendant argued that if, "as it has been repeatedly held that a victim's prior *false* charges of sexual assault are admissible on the issue of his/her credibility, it stands to reason that prior *similar* accusations are admissible on the same issue." (Italics added.)

The trial court excluded the evidence. At the hearing on the motion, the trial court stated that it "read the transcript of E.R.'s prior testimony at the trial in Shasta, and while some of the acts were similar to what she's alleging now, it was far more extensive at the Shasta County trial than she's alleging now." Responding to the argument that E.R.'s sexual knowledge might have come from the prior incidents of abuse, the trial court stated that E.R. was not "using sophisticated terms to describe what happened to her," but was simply "talking about her privates being rubbed" by defendant, and "the Court just doesn't think that the only place she could have picked up those terms was when she was molested previously." Finally, the trial court determined that admission of the evidence "would be much more prejudicial than probative."

(2)

In general, only relevant evidence is admissible, and all relevant evidence is admissible unless subject to a rule of exclusion; the trial court has broad discretion in determining the relevance of evidence. (*People v. Fields* (2009) 175 Cal.App.4th 1001, 1016.) "A prior accusation of rape is relevant to the complaining witness's credibility,

11

but only if the accusation is shown to be false." (*People v. Winbush* (2017) 2 Cal.5th 402, 469 (*Winbush*).)

Here, defendant's trial counsel conceded that the person E.R. accused of sexual assault was found guilty of the charged offenses. The extent to which E.R. truthfully accused another person of sexual assault has no relevance to E.R.'s credibility in making the current accusations against defendant. (See *Winbush, supra*, 2 Cal.5th at p. 469.) On appeal, however, defendant argues E.R. accused "other men of rape or sexual molestation," the accusations "were found by a court not to be credible," and the fact E.R. "may have been found to have untruthfully accused other men in the past of sexual abuse" should have been admitted to show "she has a history of lying or saying things that were not believable about her sexual past." Defendant does not cite this court to any portion of the record indicating that E.R.'s accusations have been found to be untruthful.[4]

The trial court did not abuse its discretion in excluding evidence of E.R.'s prior accusation.[5]

### III

Defendant further contends the trial court erred by blacking out certain bracketed portions of the witness credibility jury instruction (CALCRIM No. 226) that would have

---

[4] The People note in respondent's brief that "appellant's repeated suggestions that the victim's prior allegations were false . . . are starkly belied by the record." Rather than acknowledging this fact, or disputing it with further citations to the record, defendant's reply brief does not respond. " 'Counsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.' " (*Perry v. Kia Motors America, Inc.* (2023) 91 Cal.App.5th 1088, 1096.)

[5] Defendant does not argue on appeal that the similarity of the accusations made the prior accusation admissible even though the previously accused person was found guilty. Any such argument is forfeited.

instructed the jury to consider the witness's character for truthfulness and other related factors. This contention is also forfeited.

During E.R.'s testimony, her character for truthfulness was not discussed. And throughout the trial, the trial court did not admit any evidence pertaining to a witness's character for truthfulness. As a result, during the jury instruction conference, the trial court stated it would black out the following bracketed portions of the witness credibility instruction as unsupported by the evidence: " 'What is the witness's character for truthfulness? Has the witness been convicted of a felony? Has the witness engaged in other conduct that reflects on his or her believability? Was the witness promised immunity?' All of those will be blacked out." Defendant's trial counsel did not object.

"Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights. [Citations.] The question is whether the error resulted in a miscarriage of justice under *People v. Watson* (1956) 46 Cal.2d 818." (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927 (*Anderson*).)

Although the trial court has a sua sponte duty to instruct on the principles set forth in CALCRIM No. 226, "it may omit factors that are inapplicable under the evidence." (*People v. Horning* (2004) 34 Cal.4th 871, 910.) Defendant does not cite evidence in the record supporting the inclusion of the omitted bracketed portions of CALCRIM No. 226, and we have not found any in our review. There was no error in omitting the bracketed portions of the instruction. (*People v. Long* (2005) 126 Cal.App.4th 865, 872.) Moreover, contrary to defendant's assertion that his right to a fair trial was violated, "[t]he omission of an inappropriate instruction does not violate a defendant's rights to due process and to present a defense." (*Ibid*.) Because the blacking out of the instruction did not result in a miscarriage of justice, the contention is forfeited.

IV

Defendant contends the prosecutor engaged in prosecutorial misconduct. The arguments are either forfeited or fail on the merits.

13

"We review claims of prosecutorial misconduct pursuant to a settled standard. 'Under California law, a prosecutor commits reversible misconduct if he or she makes use of "deceptive or reprehensible methods" when attempting to persuade either the trial court or the jury, and it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted. [Citation.] Under the federal Constitution, conduct by a prosecutor that does not result in the denial of the defendant's specific constitutional rights -- such as a comment upon the defendant's invocation of the right to remain silent -- but is otherwise worthy of condemnation, is not a constitutional violation unless the challenged action " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " ' [Citations.] In addition, ' "a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion -- and on the same ground -- the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." ' " (*People v. Dykes* (2009) 46 Cal.4th 731, 760 (*Dykes*).)

Defendant contends the prosecutor presented improper spectral evidence by eliciting testimony from E.R. about conduct that occurred while she was asleep, and then improperly argued to the jury that E.R. must have woken up at some point during the events. As we have already stated, defendant did not object to E.R.'s testimony on the ground that she had no personal knowledge of events that happened while she was purportedly asleep. Defendant also did not object to the prosecutor's argument that E.R. must have woken up during the incidents. This assertion of prosecutorial misconduct is therefore forfeited unless objecting "would have been futile or an admonition would not have cured the harm." (*Dykes, supra*, 46 Cal.4th at p. 760.)

Objection to E.R.'s testimony and the prosecutor's comments would have been futile only in the sense that they would have been properly overruled. The trial court would have properly overruled a personal knowledge objection to E.R.'s testimony

14

because a reasonable jury could have concluded that her testimony was based on her perception of actual events. (See *Anderson, supra*, 25 Cal.4th at pp. 573-574.)

In response to defense counsel's argument that there was no evidence E.R. woke up during the incidents, the prosecutor argued "she certainly was awake enough to be aware of what was happening." The prosecutor also argued there was "no testimony that she was asleep when this happened" and "absolutely no evidence . . . that maybe she was half asleep. In fact, the evidence is the opposite. She gave a very clear and concise description of the events that occurred." Although E.R.'s testimony that she "wasn't waking up" could be construed to mean that she was asleep during the incidents, the fact that she described them in detail cuts against that interpretation of her testimony. In other words, a fair inference from her detailed description of the incidents is that she was awake when they occurred. Viewed in context, that is the argument the prosecutor was making. Given the wide latitude afforded to prosecutors during argument, this was fair comment on the evidence. (See *People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1529 [fair comment on the evidence can include reasonable inferences].) Thus, even if the claim is not forfeited for failure to object, it fails on the merits.

Defendant also argues the prosecutor improperly vouched for the conclusiveness of the DNA evidence. Specifically, the prosecutor argued during his closing argument: "Samples taken from her breasts, which is where she says he had kissed and sucked, turned up with DNA that is so consistent with him, that the numbers are astronomical." The prosecutor continued: "That's him. Unless he has an identical twin out there that nobody knows about, it's his DNA that is 13, with 15 zeros after it, likelihood of it being someone other than him. [¶] So make no bones about it, his DNA was on her breast where she said it would be. Completely consistent with her story and completely consistent with it being [defendant] who had done that." The prosecutor made similar statements during his rebuttal argument.

15

Here again, defendant did not object to these comments or request a curative admonition. This failure forfeits the claim unless such an objection "would have been futile or an admonition would not have cured the harm." (*Dykes, supra*, 46 Cal.4th at p. 760.) To the extent the prosecutor misstated how conclusive the DNA evidence was, the trial court could have admonished the jury that the prosecutor's argument was not evidence and to carefully review the DNA analyst's testimony regarding the statistical significance of the DNA evidence. Such an admonition would have cured any assumed harm arising from the challenged argument to the jury. The claim is forfeited.

Defendant also argues the prosecutor violated *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*) by failing to test E.R.'s underwear, bra, and bedsheets for DNA evidence, or allowing defendant to do so, because it might have tended to exonerate defendant. Preliminarily, there is nothing in the record suggesting the defense was prevented from conducting independent DNA testing of the bra and underwear that were collected as evidence. No such request was made. But as to the core of the contention, that the prosecutor declined to conduct the testing because it might have exonerated defendant, the argument is undermined by the record. Defendant cites four pages of the trial transcript and claims that the lead detective testified he did not have the items tested for DNA because it might have tended to exonerate defendant. Nowhere in the cited pages does the detective make such a statement or imply that he held such a belief. Instead, the detective explained that some of E.R.'s clothing was collected during the sexual assault examination, but he did not believe her bra and underwear were tested for DNA evidence, and the detective did not collect E.R.'s bedsheets from her house because he believed "they had been laundered." Moreover, contrary to defendant's assertion in his briefing, the fact that the prosecutor did not initiate such tests or hand over such evidence to the defense does not mean the prosecutor accepted the detective's purported belief that the evidence might have exonerated defendant.

16

Defendant has not established a *Brady* violation. (*Brady, supra*, 373 U.S. at p. 87.) "Evidence is material under *Brady* if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. [Citations.] 'A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial." [Citation.]' [Citations.] . . . *Brady*, however, does not require the disclosure of information that is of mere speculative value." (*People v. Gutierrez* (2003) 112 Cal.App.4th 1463, 1472.) Defendant speculates that testing E.R.'s underwear, bra, and bedsheets would have exonerated him. Such speculation is not enough to demonstrate a *Brady* violation. Indeed, as the People observe in the respondent's brief, "[t]he absence of DNA in the victim's clothing would not have led to acquittal in light of [defendant's] DNA on the victim's body." The same can be said with respect to the bedsheets.

Defendant further argues the prosecutor improperly presented the DNA evidence even though it "was essentially collected by an interested party, [E.R.'s mother] after [the lead detective] explained to her . . . how to collect the evidence on his behalf." In support, defendant cites the same four pages of the lead detective's testimony, but those pages do not support his assertion.

In addition, defendant argues the prosecutor misstated the law during the hearing on defendant's motion for acquittal of the forcible lewd or lascivious conduct counts. The argument is forfeited for two reasons: defendant's briefing of the issue does not contain a single citation to the record (*In re S.C., supra*, 138 Cal.App.4th at p. 408), and defendant did not object to the purported misstatements on prosecutorial misconduct grounds or request appropriate admonitions (*Dykes, supra*, 46 Cal.4th at p. 760). In any event, defendant's argument fails because "the comments were not made in the presence of the jury, and defendant fails to demonstrate how these comments outside the jury's

17

presence . . . prejudiced the proceedings below." (*People v. Carter* (2005) 36 Cal.4th 1215, 1265.)

V

Furthermore, defendant claims the trial court was biased against him. However, defendant never moved to disqualify the judge on the ground of bias. "A defendant may not go to trial before a judge, betting on a favorable result and failing to raise objections of bias, and then argue on appeal that the judge was biased. [Citation.] So we deem the claim of judicial bias to be forfeited. . . . We likewise note that defendant's willingness to let the entire trial pass without articulating an appropriate objection 'strongly suggests' his claim is without merit." (*Johnson, supra*, 6 Cal.5th at p. 592.) Because this claim is forfeited, we deny defendant's request for judicial notice with respect to five items that he asserts are relevant to this claim.[6]

Defendant relies on Code of Civil Procedure section 170.1 to argue that the trial judge was statutorily disqualified from presiding over his trial. However, Code of Civil Procedure section 170.3, subdivision (d) provides: "The determination of the question

---

[6] We also deny the request for judicial notice with respect to the remaining two items, portions of two journal articles in the field of psychology which state, respectively, that human beings are not well described by a rational-agent psychological model, and that people in a dream state may have vivid sensory experiences while asleep. Although defendant asserts these are matters of common and general knowledge, we note that courts should exercise caution when taking judicial notice on that basis: " ' "A matter properly a subject of judicial notice must be 'known,' that is, well established and authoritatively settled, not doubtful or uncertain. In every instance the test is whether sufficient notoriety attaches to the fact involved as to make it safe and proper to assume its existence without proof. In harmony with that view it has been said that courts must 'judicially recognize whatever has the requisite certainty and notoriety in every field of knowledge, in every walk of practical life.' . . . A matter to be within judicial cognizance must be known 'within the limits of the jurisdiction of the court.' " ' " (*Galloway v. Moreno* (1960) 183 Cal.App.2d 803, 809, quoting *Varcoe v. Lee* (1919) 180 Cal. 338, 345.) Defendant has not persuaded us that this standard has been met with respect to the psychological propositions he asks us to judicially notice.

18

of disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought" within 10 days of notice of the parties of the decision. The California Supreme Court has held that this provision "preclud[es] a litigant from challenging denial of a disqualification motion on appeal from a final judgment." (*People v. Brown* (1993) 6 Cal.4th 322, 333.) No such motion was made in the trial court, resulting in forfeiture of the issue on appeal (*Johnson, supra*, 6 Cal.5th at p. 592), but even if such a motion had been made and denied, the statutory question of whether the trial judge should have recused herself would still not be properly raised in this appeal. Only a challenge based on the constitutional right to a fair trial may be raised in this appeal. Such a constitutional claim is also forfeited for failure to seek to have the trial judge recused by statutory means. (*Brown,* at p. 336.)

## VI

Defendant further asserts his trial counsel provided ineffective assistance in a number of respects. He is mistaken.

" 'In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.' " (*People v. Gray* (2005) 37 Cal.4th 168, 206-207.) It is defendant's burden to establish both deficient performance and prejudice. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "[A] conviction will be reversed for ineffective assistance [on direct appeal] only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation." (*Ibid*.)

Defendant's ineffective assistance claim appears to fault the entirety of trial counsel's representation: "Trial counsel called no witnesses, submitted no exhibits, offered no alternative theory of the facts, rarely objected to clearly biased and inherently

19

prejudicial evidence, did not move [the trial judge] to recuse herself or to declare a mistrial, and barely cross-examined witnesses regarding self-contradictory prejudicial statements without or mostly without probative value about the events in question."

Whether to call witnesses is "a matter of trial tactics, unless the decision results from unreasonable failure to investigate." (*People v. Bolin* (1998) 18 Cal.4th 297, 334.) Defendant does not specifically argue that trial counsel was ineffective for failure to investigate the case. Defendant also does not reveal what witnesses he believes should have been called, or what exhibits should have been submitted, except for suggesting that trial counsel should have secured admission of "evidence tending to show that [E.R.'s mother] was greedy and [E.R.] was not telling the truth." Defendant suggests such evidence could have been obtained from his divorce proceeding and that it would have shown "that [E.R.] was very likely not a virgin." He further suggests trial counsel should have presented evidence to provide "context [for defendant's] unfortunate statement that [E.R.] might lose her virginity if she didn't wake up." However, defendant's appellate briefing does not specifically state what any of this purported evidence is, or provide any reasoned argument establishing that the trial court should have admitted the evidence had it been proffered below. And if trial counsel could have reasonably concluded any such evidence would have been properly excluded, trial counsel would not have been ineffective for failing to bring a futile motion to admit it. (See *People v. Price* (1991) 1 Cal.4th 324, 387 (*Price*) [trial counsel "does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile"]; *People v. Thompson* (2010) 49 Cal.4th 79, 122.) Defendant has failed to establish deficient performance in this regard.

With respect to trial counsel's purported failure to offer an alternative theory of the facts, this assertion is belied by the record. Trial counsel argued that E.R., "by [her] own testimony . . . was not awake" when defendant was alleged to have assaulted her, and was likely in a "dream-like state" and therefore not a credible witness to what she claimed

occurred. Trial counsel also pointed out various arguable shortcomings in the prosecution's case against defendant.

With respect to trial counsel's failure to object to "clearly biased and inherently prejudicial evidence," as we have already explained, E.R.'s testimony was properly admitted notwithstanding defendant's repeated insistence that she was simply narrating her dreams. Defendant does not provide reasoned argument establishing that any other evidence should have been excluded had proper objections been made below. And, again, if trial counsel could have reasonably concluded any such objections would have been overruled, trial counsel would not have been ineffective for failing to object. (See *Price, supra*, 1 Cal.4th at p. 387.)

Trial counsel's failure to cross-examine E.R. about whether she was actually asleep or had nightmares about defendant molesting her is also a matter of trial tactics that we decline to second-guess on appeal. Trial counsel could have reasonably concluded that the jury would not have looked favorably on a more vigorous cross-examination of E.R. And the cross-examination that defendant favors on appeal would have run the risk of E.R. clearly stating that she was in fact awake while defendant assaulted her on each of the occasions.

Defendant's remaining arguments need not be specifically addressed because any remaining assumed deficiencies in trial counsel's performance do not rise to the level of constitutionally deficient assistance. This is because defendant has not demonstrated resulting prejudice. "To establish prejudice, '[i]t is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." ' [Citation.] To show prejudice, defendant must show a reasonable probability that he would have received a more favorable result had counsel's performance not been deficient. . . . 'The likelihood of a different result must be substantial, not just conceivable.' " (*People v. Kaihea* (2021) 70 Cal.App.5th 257, 268.) The evidence in this case was very strong. Absent any

21

remaining assumed deficiencies in trial counsel's performance, there is no reasonable probability of a more favorable outcome.

## VII

Defendant contends the trial court erred by denying his motion for a new trial. However, his argument in this regard spans two short paragraphs, cites to only two pages of the trial transcript when quoting isolated portions of the trial court's statements during the hearing on the motion, does not cite any legal authority, and does not provide any reasoned argument supporting a conclusion that the trial court's decision denying the motion was an abuse of discretion. This contention is forfeited for failure to adequately brief the issue. (*In re S.C., supra*, 138 Cal.App.4th at p. 408.)

In any event, "[b]ecause a ruling on a motion for new trial rests so completely within the trial court's discretion, we will not disturb it on appeal absent ' " 'a manifest and unmistakable abuse of discretion.' " ' [Citation.] None appears here." (*People v. Earp* (1999) 20 Cal.4th 826, 890.)

## VIII

Finally, we will order correction of the sentencing minutes and abstract of judgment. Both must accurately reflect the sentence imposed by the trial court. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385-390.) Here, the trial court imposed a sentence of 10 years for count 1, a consecutive term of three years four months for count 2, and consecutive terms of two years eight months for counts 3 through 6, resulting in a total sentence of 24 years. The sentencing minutes and abstract of judgment accurately reflect these sentences except for count 2, and correctly calculate the total sentence to be 24 years. We shall order the trial court to correct the sentencing minutes and abstract of judgment to reflect a sentence of three years four months for count 2.

## DISPOSITION

The judgment is affirmed.  The trial court is directed to correct the sentencing minutes and abstract of judgment to accurately reflect defendant's sentence of three years four months for count 2, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.


                                           /S/
                                     MAURO, J.


We concur:


/S/
ROBIE, Acting P. J.


/S/
MESIWALA, J.